**FILED**
**Feb 10, 2022**
**01:33 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE

| | | |
|---|---|---|
| **DOMINIC MANCINO, III,** | ) | **Docket No.: 2021-04-0181** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 42986-2021** |
| **CITY OF WESTMORELAND,** | ) | |
| **Employer,** | ) | **Judge Robert Durham** |
| **And** | ) | |
| **PUBLIC ENTITY PARTNERS,** | ) | |
| **Insurer.** | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS

This Court held an Expedited Hearing on February 1, 2022. Mr. Mancino seeks an order requiring Westmoreland to provide benefits for post-traumatic stress disorder that he allegedly incurred while dealing with a distraught mother of an overdose victim. The Court holds that Mr. Mancino did not provide sufficient evidence to show that he is likely to prove at trial that he suffers from compensable PTSD and denies his requests.

### History of Claim

*Lay Testimony*

Westmoreland hired Mr. Mancino to work as a policeman in 2018 and a year later was promoted to sergeant. Mr. Mancino's job involved the usual confrontations that occur with police work.

In addition to his job, Mr. Mancino had other significant stressors in his life. He was involved in a lawsuit against a previous employer and had sole responsibility for raising his two young children after a contentious divorce. He suffered from chronic hypertension, and given his work on the night shift and his parental responsibilities, he only slept a few hours each day.

On January 23, 2021, Mr. Mancino and another officer responded to a call about a drug overdose. Mr. Mancino had many past encounters with the victim and his mother and

1

built a relationship with them. Upon arrival, the officers found the victim on the floor. The victim had also defecated on himself. The other officer attempted CPR, while Mr. Mancino collected evidence. He also had to deal with the mother, who was frantic, screaming, weeping and repeatedly asking if her son were dead. He testified that this was the first time he ever had to assist a distraught mother at the scene of a drug overdose.

Mr. Mancino stated that, while he had been through many stressful and traumatic events as an officer, this incident affected him in a way he had never experienced before. He kept reliving the scene over and over. In the weeks that followed, he had daily nightmares, and he drank heavily to stave them off. However, he did not tell anyone at the police station of his difficulties.

Mr. Mancino suffered a heart attack on February 16 and filed a workers' compensation claim afterward.[1] He was interviewed on March 30 by the carrier. Mr. Mancino admitted to the typical stress faced by police officers but stated that he had no unusual stressors recently. He could think of nothing that might have precipitated his heart attack and did not mention the January incident.

On April 6, Mr. Mancino was on vacation when the Tennessee Bureau of Investigation served him with a search warrant. The agents informed Mr. Mancino that they were investigating charges that he solicited sex from a minor and impounded all of his electronics. Mr. Mancino's children were visiting their mother at the time, and she refused to let them return once she learned of the allegations.[2]

A few days later, Mr. Mancino attended training about PTSD and police suicide. Mr. Mancino testified that, afterward, he believed that he "checked all the boxes" for PTSD. He immediately told another sergeant that he believed he needed help. He thought the sergeant communicated this to Westmoreland Police Chief Steven Jolley.

Chief Jolley and Captain Ray Amalfitano, Mr. Mancino's immediate supervisor, then met with Mr. Mancino. They discussed the investigation and potential ramifications. Mr. Mancino told Chief Jolley that his "heart is no longer in law enforcement" and cited several stressful incidents, including the drug overdose. He told the Chief that he might be suffering from PTSD. He also said that he was contemplating changing careers.

Chief Jolley responded that he would see if Westmoreland would pay Mr. Mancino through the end of the month while he looked for another job. In the meantime, he was on administrative leave pending the investigation. Mr. Mancino told Chief Jolley that he had called a suicide hotline recently, and he wanted to speak with a counselor but was unable to get an appointment. Captain Amalfitano spoke with a friend at Hope Family Health and

---

[1] That claim is separate from this one.
[2] The children are now back in Mr. Mancuso's custody.

was able to get Mr. Mancino an appointment.

At the hearing, Chief Jolley testified that he has been in law enforcement for more than twenty-five years. He stated that a police officer must frequently deal with death, by violence or accident, including by drug overdose. Moreover, distraught loved ones are often present at an accident or crime scene, and police officers are routinely obligated to assist them. He also emphasized that Mr. Mancino was placed on administrative leave because of the criminal investigation and not his alleged PTSD. Chief Jolley admitted that he did not notify Westmoreland's carrier about Mr. Mancino's claimed PTSD, but he stated that it was not his job to do so.

*Medical Proof*

Mr. Mancino saw Tess Cothran, a licensed professional counselor, on April 12. Ms. Cothran noted that Mr. Mancino claimed depressive and trauma symptoms, such as nightmares, repeated memories/thoughts, avoidance, loss of joy, emotional distance, and hypervigilance. Mr. Mancino told her that he had been abusing alcohol for the past six months to avoid nightmares that he attributed to trauma from working in law enforcement, and he had been suffering from symptoms "for a while now." However, her report did not mention the drug overdose or describe any other specific traumatic incidents. At his next visit, Mr. Mancino stated that he had been having nightmares "for a long time," but they had become more frequent over the "past six or eight months."

Ms. Cothran continued to see Mr. Mancino regularly through 2021. While she noted other non-work-related stressors, she did not mention the overdose. In July, she wrote that more than fifty percent of "Mr. Mancino's posttraumatic stress disorder symptoms are indeed a result of employment experiences." She did not specify the "experiences." Mr. Mancino conceded that Ms. Cothran's earlier notes did not mention the overdose. However, he said that she certainly knew about it, and the notes are merely brief summaries of their lengthy sessions. He also said that it took some time in therapy to realize that the overdose was the inciting event for his PTSD.

In response to Ms. Cothran's records, Westmoreland submitted an employer's examination report dated January 21, 2022, from psychiatrist Scott Ruder, M.D. His report states that Mr. Mancino described the January incident but did not say it was significantly different or more disturbing than previous calls for overdoses. Mr. Mancino said that he drank as much as a "1.75 liter of tequila" a day, January through May, to sleep without nightmares. He explained a common nightmare was hearing the victim's mother screaming, although the nightmares were not as intense as before. He also described apathy and a persistent low mood and energy but denied panic attacks or flashbacks.

Dr. Ruder concluded that Mr. Mancino did not have a "mental injury under the workers' compensation law." He further found that a PTSD diagnosis was

3

unwarranted. He noted inconsistencies, such as Mr. Mancino's alcohol use, and also found it significant that the PTSD claim occurred only days after being served with a search warrant. As to the depressive symptoms,

Dr. Ruder observed that Mr. Mancino described persistent depressive symptoms, but these symptoms also did not meet the definition of mental injury under workers' compensation law. While he believed that Mr. Mancino did identified a work-related event in January 2021 that resulted in a "sudden and unusual stimulus," he did not believe, to a reasonable degree of medical certainty, that it resulted in a mental injury, or that Mr. Mancino's employment caused by was "50% or more" the cause for athe need to treat a mental injury.

In response to Dr. Ruder's report, Mr. Mancino obtained an evaluation from psychologist David Pickering, Ph.D. on January 27. Dr. Pickering noted that Mr. Mancino responded to the drug overdose call on "January 23, 2020" and it was after the "one-year anniversary" of his heart attack. Mr. Mancino described his nightmares as the mother "screaming over the loss of her only surviving child." Dr. Pickering agreed with Ms. Cothran that the PTSD diagnosis was appropriate, and the event that triggered it was the drug overdose and Mr. Mancino's encounter with the victim's mother.

## Findings of Fact and Conclusions of Law

### *Compensability*

Mr. Mancino must present evidence from which this Court can determine that he is likely to prove at trial that the benefits he seeks are for a compensable mental injury under Tennessee Workers' Compensation Law. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). Tennessee Code Annotated section 50-6-102(17) (2021) defines "mental injury" as "a loss of mental faculties or a mental or behavioral disorder, arising primarily out of . . . an identifiable work-related event resulting in a sudden or unusual stimulus." A "sudden mental stimulus" must be "unusual from the ordinary stress of the worker's job." *Edwards v. Fred's Pharmacy*, 2018 TN Wrk. Comp. App. Bd. LEXIS 9, at *7 (Feb. 14, 2018). The Court holds that Mr. Mancino did not meet this burden.

Mr. Mancino must show that his employment caused his alleged injury "to a reasonable degree of medical certainty," which means "it is more likely than not considering all causes, as opposed to speculation or uncertainty." Tenn. Code Ann. § 50-6-102(14). Further, causation must be shown through an expert medical opinion. *Id*.

Mr. Mancino's only opinions on diagnosis and causation are from Ms. Cothran, a licensed counselor, and Dr. Pickering, a psychologist. "The law in Tennessee is clear, "causation and permanency of a mental injury must be proven by a medical doctor, not a

4

psychologist[.]." *Geddings v. Imperial Guard & Detectives Servs.*, No. W1999-00199-WC-R3-CV, 2000 Tenn. LEXIS 368, at *9 (Tenn. Workers' Comp. Panel June 27, 2000). Without even weighing the evidence, the Court must hold that Mr. Mancino has not provided an expert opinion sufficient to prove a causal relationship between his alleged PTSD and his employment.[3]  Thus, his requests for temporary disability benefits and reimbursement for medical expenses are denied.

*Panel*

The issue remains whether Westmoreland must provide Mr. Mancino a panel of doctors, even though he has yet to prove causation. *See Hawes v. McLane Co., Inc.*, 2021 TN Wrk Comp. App. Bd. LEXIS 30, at *10 (Aug. 25, 2021).  Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) requires an employer to offer an injured employee a panel of three doctors from which the employee may choose a treating physician.  Westmoreland did not introduce any evidence that it did so after Mr. Mancino notified Chief Jolley of his alleged PTSD.  Thus, the Court holds that Mr. Mancino is likely to prove that he was not given an opportunity to choose an authorized physician.

However, this does not necessarily mean that Westmoreland is obligated to provide a panel at this stage. *See Berdnik v. Fairfield Glade Com'ty Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10-11 (May 18, 2017).  In *Berdnik*, the Appeals Board held that the initial question is whether the evidence shows that the employee is likely to prove at trial that she is entitled to benefits. *Id*. at *11.  Even though the employer failed to provide a panel, the only medical evidence at the hearing proved that the employee's condition was not causally related to employment.  Thus, the Appeals Board held that the employee did not show she was likely to prevail at trial and was not entitled to a panel of doctors. *Id*.

The analysis in this case is the same.  Dr. Ruder gave the only medical causation opinion.  He clearly stated, to a reasonable degree of medical certainty, that Mr. Mancino does not suffer from PTSD.  Further, while he might have depressive symptoms, Dr. Ruder did not believe that this condition qualifies as a "mental injury" under workers' compensation law, nor was his employment more than fifty percent responsible.

Moreover, like Dr. Ruder, the Court finds the timing of Mr. Mancino's claim significant.  The alleged incident occurred in late January, but he did not give notice until April, and even then, he only mentioned the incident among several others.  More important, he gave notice immediately after learning of the criminal investigation, which the Court does not find coincidental.

---

[3] Neither Ms. Cothran nor Dr. Pickering said that Mr. Mancino's mental condition disabled him from work, and Chief Jolley explicitly stated that Mr. Mancino was on administrative leave pending the outcome of the criminal investigation and not his asserted mental injury.  Thus, even if Mr. Mancino had proved causation, he still would not be entitled to temporary disability benefits at this time.

Mr. Mancino also had several other significant stressors in his life. In addition to the criminal investigation, he also had to cope with his recent heart attack, lawsuit, relationship with his ex-wife, temporarily losing custody of his young children and sleep deprivation. It is unclear how much Ms. Cothran and Dr. Pickering were told of these additional stressors before forming their opinions. Further, Ms. Cothran noted that Mr. Mancino was suffering from nightmares "for a long time," and both the nightmares and his drinking began to intensify several months before the January incident.

Finally, the Court disagrees with Dr. Ruder that the overdose event was "sudden and unusual," given Mr. Mancino's job as a police officer. As Chief Jolley testified, dealing with death, including drug overdoses, is an unfortunate aspect of every police officer's job. He further stated that interacting with distraught loved ones at an accident or crime scene, while certainly unpleasant and stressful, is common for law enforcement.

Mr. Mancino testified that this was the first time he ever had to attend to a grieving mother. Yet, the standard is not whether the event was unusual for the employee, but if it was unusual for the type of work the employee did. *Edwards,* at *7. The Court holds that the evidence did not prove that the overdose incident met this standard.

IT IS, THEREFORE, ORDERED THAT:

1. Mr. Mancino's request for benefits is denied.

2. The Court refers this case to the Bureau's Compliance Program to investigate and determine if, and to what extent, it should issue a penalty for Westmoreland's apparent failure to comply with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i).

3. This case is set for a Scheduling Hearing on **March 28, 2022, at 10:00 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

**ENTERED on February 10, 2022.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

6

# APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Notice Expanding Deadlines
4. Westmoreland's Pre-Hearing Brief
5. Mr. Mancino's Pre-Hearing Brief
6. Westmoreland's Exhibit List
7. Westmoreland's Late-Filed Exhibit List

Exhibits:
1. Mr. Mancino's Rule 72 Statement
2. Mr. Mancino's recorded statement
3. Indictments
4. Facebook photographs
5. Complaint in action against Tennessee State University
6. Email chain between Mr. Mancino and Chief Jolley
7. First Report of Injury
8. Mr. Mancino's employment application
9. Notice of Denial
10. Medical records from Fast Pace
11. Medical records from Hope Family Care Center
12. Medical records from Hendersonville Medical Center
13. Additional records from Hope Family Care Center
14. Causation opinion from Ms. Cothran
15. Medical records from Macon County Hospital
16. Dr. Ruder's evaluation
17. Dr. Pickering's evaluation
18. Additional Facebook posts
19. Exhibits attached to Westmoreland's Notice of Late-Filed Exhibits
20. News releases

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on February 10, 2022.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Dominic Mancino, III | X | | X | 206 Meador Drive, Lafayette, TN 37383 dangeloiii@hotmail.com |
| Jennifer Buchanan | | | X | Jennifer.buchanan@farrar-bates.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
[www.tn.gov/workforce/injuries-at-work/](www.tn.gov/workforce/injuries-at-work/)
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*